CHIEF JUSTICE TURNAGE,
dissenting:
I concur with the dissent of Justice James C. Nelson and emphasize that Justice Nelson’s dissent is absolutely correct as a matter of law and in keeping with this Court’s precedents.
On August 20,1994, at approximately 10:00 a.m. Christine Peterson drove her Jeep Cherokee from her home in Darby, Montana, to Missoula, Montana. Riding with her were her three school-aged children and Mary Nelson, a seventh grader and friend of her daughter. The purpose of the trip to Missoula was school shopping for the children.
At approximately 5:30 p.m., Christine Peterson and her passengers were traveling from Missoula on the return trip to their home in Darby. For Christine Peterson and the children, traveling south on Highway 93 at approximately 6:00 p.m. and at a point near Stevens-ville, Montana, all hell broke loose.
Christine Peterson was driving safely in her southbound lane of Highway 93 at a speed well within the speed limit when David B. *254 Lambert, defendant and appellant in this cause, drove his Monte Carlo vehicle from the parking area of the Fort Owen Inn saloon, onto Highway 93, crossing into the southbound lane occupied by the Peterson vehicle and smashing head-on into her vehicle. Lambert’s actions caused a substantial risk of death and caused serious bodily injury to Christine and her passengers.
At the scene Highway Patrol Officer Thomas Hamilton described Lambert’s condition when he drove his vehicle head-on into the Peterson vehicle in this manner:
... He was — I have always referred to it as pie faced. He didn’t seem to be in physical control of his muscles and whatnot. He was slouched. His speech was slurred. He was leaning. He wasn’t standing erect. Just his physical appearance struck me as someone under the influence of alcohol.
Lambert’s person had an odor of alcohol and he failed field sobriety tests at the scene. When taken to the sheriff’s office at Hamilton, he refused to cooperate in any other sobriety tests and also refused to give a breath test for alcohol content in his body. At the scene, Officer Hamilton found in Lambert’s vehicle a bottle of Black Velvet whiskey approximately three-fourths full and both empty and full bottles of beer.
After Lambert’s trial for felony criminal endangerment, a jury found him guilty of that charge.
At sentencing, Lambert’s criminal history for driving motor vehicles was reviewed by the District Court. This record is an eye popper.
For the period June 11, 1983, to November 28, 1994, Lambert’s criminal history record discloses that, at the time of sentencing in this case, he had been convicted thirty-eight times of serious driving offenses and that nine charges of serious driving offenses were still pending.
Nine of the serious convictions were for driving under the influence of alcohol or drunken driving. Three of the charges still pending at the time of sentencing were for driving under the influence of alcohol or drunken driving. The last such charge still pending is alleged to have been committed while Lambert was released on bail for the felony criminal endangerment charge and the pending driving under the influence of alcohol charge of August 20, 1994.
Lambert’s driver’s license has also been suspended on two occasions when he refused to take a chemical test for alcohol in his body.
Between May 23, 1987, and August 20, 1994, Lambert had been convicted seven times of driving a motor vehicle while his license was suspended or revoked and, at the time of sentencing in this case, he had pled guilty to driving a motor vehicle while his license was *255 suspended or revoked on August 20, 1994. Three other charges against Lambert of driving while his license was suspended or revoked apparently are still pending.
Mary Nelson, a seventh grader and one of the victims in the crash, has said it all when she stated, “I feel that when David gets out of jail, it’s not a matter of if he kills someone, hut when.”
The majority of this Court is reversing the felony criminal endangerment conviction of Lambert essentially because of their holding that the District Court misled the jury in giving court’s instruction no. 12. The majority’s opinion is not correct as a matter of law, as clearly pointed out by Justice Nelson’s dissent. Further, the majority opinion is not correct as a matter of common sense.
Section 45-5-207, MCA, the statute under which Lambert was charged and properly convicted of felony criminal endangerment, insofar as pertinent to this case, provides:
(1)A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment.
Instruction no. 12 given to the jury stated:
A person acts knowingly:
(1) when he is aware of his conduct or
(2) when is aware under the circumstances that his conduct constitutes a crime or ■
(3) when he is aware there exists the high probability that his conduct will cause a specific result.
The statute is clear, and the instruction is clear. The jury simply could not have been misled. Lambert acted knowingly under any of the three definitions in instruction no. 12. Lambert in all probability has had more experience as a drunken driver than anyone in Montana — he knew what he was doing and was aware of his conduct on August 20, 1994, when he drove under the influence of alcohol.
The Bench and Bar are well aware that the rule of law, a basis of stability in our society, is dependent upon public confidence in our courts and justice system. In its legal arabesque, pirouette, and struggle to reverse Lambert’s conviction, the majority in this case will, I believe, undermine public confidence in the court and justice system of Montana. Decisions such as this leave no doubt why MADD is angry.
I would affirm the District Court.
JUSTICE ERDMANN concurs in the dissent of CHIEF JUSTICE TURNAGE.